UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| | ) | |
| BRENT TREBOR GORDON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 14-3146 |
| | ) | |
| CITY OF HOUSTON, TEXAS | ) | DECLARATORY AND INJUNCTIVE |
| and ANNISE PARKER, in her official | ) | RELIEF SOUGHT |
| capacity as Mayor of the City of | ) | |
| Houston, Tex. | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S VERIFIED COMPLAINT[1]

Plaintiff BRENT TREBOR GORDON brings this action for injunctive and declaratory

relief, as well as nominal damages, and complains as follows:

## PRELIMINARY STATEMENT

1. This is a First Amendment constitutional challenge to a provision of the Code of

Ordinances of the City of Houston imposing an inexplicable ten-month blackout period on

fundraising for city office. Section 18-35(a) of the Code of Ordinances prohibits candidates for

city office at the November 2015 general elections from soliciting or receiving contributions

until February 1, 2015, a mere nine months before Election Day. HOUSTON, TEX., CODE OF

ORDINANCES ch. 18, art. IV § 35(a) (1985) (hereinafter short-cited as "§ 18-35(a)"). This

blackout period imposes an aggregate limit of zero dollars on contributions to a City campaign

during the prohibited period, regardless of how many contributors would like to lend their

support and regardless of how small their desired contributions. This irrationally-abbreviated

---

[1] The verification for Plaintiff is attached to this Complaint.

fundraising window stifles core political activity and prevents candidates from raising funds to run effective campaigns, yet it does not further the only legitimate governmental interest relevant in this area, which is the prevention of corruption or its appearance. *See McCutcheon v. FEC*, 134 S. Ct. 1434, 1441-42 (2014).

2. Moreover, whatever purpose the City claims is served by a ten-month fundraising blackout, that purpose is undermined in two substantial ways. First, candidates for non-City offices are permitted to raise unlimited funds which they may then transfer to use in a campaign for City office at the same November 2015 election. While any prospective candidates who do not currently hold a *non*-City office must wait until February 1 to even begin *soliciting* support, several candidates who currently hold non-City office are raising hundreds of thousands of dollars—nominally for a non-City campaign—which the donors and candidates alike understand will be devoted to their inevitable November 2015 City campaigns. Second, incumbent City officeholders who are term-limited (but remain eligible to run for other City or non-City office) may raise contributions to retire campaign debt without limitation by the fundraising blackout period or even by the base limitation on contribution amounts from individuals and political committees ($5,000 and $10,000, respectively). These exceptions codify a shocking bias toward incumbents and the political elite. More importantly, these exceptions to the blackout period— which otherwise stifles candidates such as Plaintiff—render the provision fatally underinclusive under the First Amendment.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. This civil action arises under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Plaintiff seeks a declaration of his rights in this case of

Verified Complaint                                   2

actual controversy within this court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because defendants all reside in this judicial district.  The City of Houston is located in this district, and the Defendants perform their official duties in this district.  Additionally, a substantial part of the events giving rise to this claim occurred in this district.

## PARTIES

5.      Plaintiff Brent Trebor Gordon ("Plaintiff" or "Gordon") is a candidate for an at-large position on the City of Houston City Council at the City general election to be held in November 2015.  Gordon resides at 10907 Gulf Bridge Circle, Houston, Harris County, Texas, 77075.

6.      Defendant City of Houston, Texas (hereinafter sometimes referred to as the "City") is a home-rule municipality in Harris County, Texas with the capacity to sue and be sued. Its main address is 901 Bagby, Houston, Texas 77002.  The City of Houston, Texas is a subdivision of the State of Texas.  The City of Houston, Texas and its officials are responsible for creating, adopting, and enforcing the rules, regulations, ordinances, laws, policies, practices, procedures, and/or customs for the City of Houston, Texas.

7.      Defendant Annise Parker is the mayor of the City of Houston, Texas.  Mayor Parker's office is located at 901 Bagby, Houston, Texas 77002.  Mayor Parker is charged with the duty to see that all City of Houston laws and ordinances are enforced.  HOUSTON, TEX., CHARTER art. VI, § 7a.  She is sued in her official capacity.

Verified Complaint                           3

## STATEMENT OF FACTS

**Brent Trebor Gordon will run for City office, but is absolutely prohibited from raising funds until February 2015.**

8.      Plaintiff Brent Trebor Gordon will run for Houston City Council at-large at the November 2015 general election.

9.      Gordon feels compelled to run because he holds strong beliefs about the appropriate policies necessary to maintain Houston's status as a booming economic hub of opportunity and innovation based on free markets, not increasing government regulation.  He is deeply troubled by the failure of the City's current leadership to address Houston's budgetary problems, and their failure to address the City's severe drainage issues.  Gordon is also deeply offended at the City's blatant disregard for the constitutional rights of his fellow citizens of faith, who have been harassed with subpoenas from the City attempting to force pastors to turn their sermons over to the government.  The subpoenas have since been withdrawn, but only after significant national media attention and outrage.  He believes that he must begin campaigning *now*, spreading his ideas and seeking support, because people are paying attention to these issues *now*.

10.     Gordon believes that he must begin raising funds for his campaign immediately.

11.     Gordon cannot self-fund his campaign.  He must raise money from many donors in order to run an effective campaign.  Limitations on his ability to fundraise necessarily prevent him from spending money, because he cannot spend money that he has not yet raised.

12.     Without the ability to raise contributions, Gordon cannot pay for activities that he would otherwise immediately undertake, such as neighborhood meet-and-greets (which require funds for advertising, renting a venue, and catering); contracting for professional development of a custom campaign website to disseminate his campaign message; hiring campaign staff; and

Verified Complaint                                    4

printing and distributing campaign materials.  Gordon would begin expending funds on these activities immediately, but he cannot do so without raising money from those who support his campaign.

13.    But for the absolute ban on fundraising under section 18-35(a), Gordon would immediately solicit and accept contributions to support his campaign for City Council.

14.    But for the absolute ban on fundraising under section 18-35(a), many individuals, including but not limited to Chris Carmona, Kevin Fulton, Tanya Robertson, and Shirley Teig-Ruthemeyer, would immediately contribute funds to support Gordon in his campaign for City Council.[2]  Plaintiff anticipates many additional persons to certify the same desire to contribute to his campaign immediately.

15.    Regardless of whether Gordon is successful in his campaign for City office in November 2015, Gordon fully intends to be a candidate for City office again in future elections.

**While Gordon is stymied, other prospective City candidates rake in substantial funds.**

16.    While Gordon is prohibited from fundraising, several other persons with not-so-subtle plans to run for City office in November 2015 are able to raise substantial funds immediately.

17.    State Representative Sylvester Turner currently represents District 139 in the Texas House of Representatives, a seat he has held since 1999.  On information and belief, Mr. Turner has plans to run for Houston mayor in November 2015.

18.    In the elections to be held November 4, 2014, Mr. Turner is running unopposed for re-election to his current House seat.  While he has no opponent on the ballot in November

---

[2] Plaintiff Gordon has standing to assert not only his right as candidate to receive contributions, but also the rights of persons who would contribute to him but for the prohibition challenged here.  *See Wisc. Right to Life, Inc. v. Barland*, 664 F.3d 139, 146-48 (7th Cir. 2011).

Verified Complaint                                              5

2014, on information and belief, Mr. Turner is aggressively raising money through his current state representative campaign account which he plans to use in his mayoral campaign for the November 2015 elections. On information and belief, Mr. Turner held a fundraiser in mid-September at which he raised over $400,000. The Houston Chronicle wrote an entire story on this fundraiser and on Turner's plans to run for mayor.

19.     On information and belief, Mr. Turner sought and secured an opinion from the Houston City Attorney as to whether Mr. Turner could in fact use unexpended funds in his state representative campaign account for purposes of a campaign for City office, pursuant to section 18-38(b) of the code of ordinances.

20.     On information and belief, the City Attorney, David Feldman, confirmed via email to Mr. Turner that he could use unexpended funds in his state representative campaign account, in an unlimited aggregate amount, for purposes of a campaign for City office, so long as he only used as much of *each* of the contributions that comprise the non-City campaign account as are within the base limits under chapter 18 (that is, as if those who contributed to the non-City account had contributed under the City's limits).

21.     On information and belief, additional non-City officeholders are also raising funds and collecting them in their current non-City campaign accounts with plans to utilize those funds in a City campaign in the November 2015 elections.

22.     Former Congressman Chris Bell has declared himself to be a candidate for Houston mayor in November 2015. According to a lawsuit Mr. Bell filed against the City of Houston on October 17, 2014, Mr. Bell is not currently holding any office, and purports that he does not maintain any campaign account. *Bell v. City of Houston*, No. 2014-60848 (165th Dist. Ct., Harris County, Tex. Oct. 17, 2014) (Plaintiff's First Amended Petition). Mr. Bell sued the

Verified Complaint                                    6

City to challenge the City Attorney's interpretation of section 18-38(b) as described at paragraphs 19-20 above.  Mr. Bell's lawsuit urges that the ordinance should be read to limit to $10,000 the use of funds in a non-City campaign account for City campaigns.

23.     Mr. Bell's lawsuit argues that "[p]ermitting officials who may want to run for city office in 2015 to raise money using non-city accounts which may then simply be transferred almost in full to city accounts defeats the very purpose of the blackout period and unjustly disadvantages those who do not currently hold elective office.  The blackout period was not intended to be a fundraising bonanza for officeholders at the expense of citizens who may wish to get involved in public service…." *Id*. at ¶ 18.

**REVIEW OF RELEVANT LAW**

24.     The City of Houston has enacted a comprehensive chapter on "Ethics and Financial Disclosure" as part of its code of ordinances.

25.     Given Gordon's statement of definite intent to run for city office at the November 2015 election, Gordon is a "candidate" for "city office."  HOUSTON, TEX., CODE OF ORDINANCES ch. 18, art. I, § 2 (1985) (defining "candidate"); *see also id.* (defining "city elective office").

26.     Chapter 18, article IV of the code of ordinances imposes several detailed restrictions on solicitations and contributions "applicable to all candidates and persons making contributions to candidates." *Id*. § 18-31(a).

27.     The provision directly at issue in this suit, section 18-35(a) of the code of ordinances, provides that:

> A candidate for city office at a city general election may neither solicit nor receive contributions except during a period commencing on the 1st day of February prior to the day of the election, and ending on the 4th day of March following the election date for the race that the candidate has entered. In the event that the candidate should be in a run-off election, the final date to receive or solicit contributions shall be the 4th day of April following the election date.

Verified Complaint                                   7

*Id.* § 18-35(a).[3]

28.     The next City general election will be held in November 2015.  HOUSTON, TEX. CHARTER art. V, § 5.  Section 18-35(a) of the Code of Ordinances prohibits Gordon—and all other candidates for City office—from soliciting or accepting contributions for their City campaigns except during the very narrow window beginning February 1, 2015 and ending March 4, 2016 (with an allowance for participation in a run-off election).

29.     Several other specific limitations on solicitations and contributions are also relevant to the issues in this suit.

30.     Before setting out the numerous restrictions relevant here, it is important to recognize that restrictions on political contributions take many forms, with important ramifications for constitutional analysis.  As described by the United States Supreme Court in *McCutcheon v. Federal Election Commission*, which involved a challenge to certain provisions of the Federal Election Campaign Act of 1971, as amended, a "base limit" "restricts how much money a donor may contribute to *a particular* candidate or committee." 134 S. Ct. 1434, 1442 (2014) (emphasis added).  By contrast, the Supreme Court recognized that the provision before it in *McCutcheon*, an "aggregate limit[]" that "restrict[ed] how much money a donor may contribute in total to all candidates or committees," *id.*, was of a materially different character for First Amendment purposes.

---

[3] A similar fundraising blackout period applies to candidates in any special election to fill a vacancy.  *See* HOUSTON, TEX. CODE OF ORDINANCES ch. 18, art. IV, § 18-35(b).

Verified Complaint                               8

31.    For persons eligible to contribute to City campaigns, the City of Houston imposes *base limits* as follows:

(a) No person shall make contributions to a candidate which in the aggregate exceeds $5,000.00 per election. No political action committee shall make contributions to a candidate which in the aggregate exceeds $10,000.00 per election.

HOUSTON, TEX., CODE OF ORDINANCES ch. 18, art. IV, § 38(a) (1985).

32.    Although the base limits already restrict the *amount* that any person is eligible to contribute to a City candidate per election, the City of Houston imposes additional restrictions on contributions, and *disqualifies* certain categories of persons from contributing at all.

33.    The City of Houston prohibits contributions from being delivered to or accepted by a candidate in city owned or operated buildings or facilities, with an exception for an "authorized campaign fundraising event" held pursuant to a written agreement authorizing such use. *Id*. § 18-32.

34.    The City of Houston prohibits members of certain City-appointed boards and commissions from soliciting contributions to candidates, and prohibits candidates from accepting contributions solicited by such persons. *Id*. § 18-33(a), (b). City employees are prohibited from soliciting contributions for candidates "unless the employee is acting during off-duty hours or is on a duly approved leave of absence." *Id*. § 18-33(c).

35.    The City of Houston prohibits parties adverse to the City in litigation, or persons with certain ownership interests in such parties, from contributing "any funds to any candidate" "if the litigation seeks recovery of an unspecified amount or of an amount in excess of $50,000, exclusive of costs of court and attorneys' fees." *Id*. § 18-34.

36.     Likewise, "[i]t shall be unlawful for any contractor to contribute or offer any contribution to a candidate, or for any candidate to solicit or accept any contribution from a contractor during a contract award period." *Id*. § 18-36.  This provision encompasses three defined terms, as follows:

> *Contract* means each contract having a value in excess of $50,000.00 that is let by the city for professional services, personal services, high-technology goods, construction or services, or other goods or services of any other nature whether the contract is awarded on a negotiated basis, request for proposal basis, competitive proposal basis or formal sealed competitive bids.

> *Contract award period* means the period commencing upon the calendar day when the city takes formal action in publishing a request for a proposal or an invitation for formal bids for the award of the contract and ending upon the 30th day after the award of the contract by city council or a determination that the contract will not be awarded to a contractor.

> *Contractor* means any person who has received the award of a contract, submitted a bid or proposal in any form for the award of a contract, or been proposed to be awarded the contract in an item placed upon the city council agenda, including any other person who seeks the award of the contract and is contesting, appealing or protesting the award of the contract as proposed. The term shall include the proprietor for a proprietorship, each partner having an equity interest of ten percent or more for a partnership and each corporate officer, corporate director or holder of ten percent or more of the outstanding shares of stock for a corporation. The term shall also include any subcontractor authorized to provide all or a portion of goods, labor, or services in fulfillment of an award of a contract.

*Id*. § 18-2 ("Definitions") (italics in original).

37.     While there is no limit on the amount of a candidate's personal funds that the candidate may spend on behalf of his or her own campaign for City office, "[i]t shall be unlawful for any candidate to be reimbursed or to be repaid from campaign contributions for any personal loan in excess of $75,000.00 for the office of mayor, $15,000.00 for other city-wide office (controller or at-large council offices) or $5,000.00 for a district council office." *Id*. § 18-37(a).

Verified Complaint                               10

38. While the blackout period holds that "[a] candidate for city office at a city general election may neither solicit nor receive contributions except during" the narrow period permitted by section 18-35(a), the City code permits

> a candidate [to] utilize **unexpended political contributions raised in connection with a non-city elective public office** in an amount not to exceed the maximum contribution that the candidate may accept from a single donor under subsection (a) [the base limits discussed above], regardless of category, provided he files with the city secretary a statement of intent to do so at the time of the filing with the city secretary of his campaign treasurer designation, or if the filing of a campaign treasurer designation is not required, prior to the making of any expenditure in connection with his campaign for city elective office.

*Id.* § 18-38(b) (emphasis added).

39. This provision affords a means by which any person who holds a non-City office, or even a person who may be comfortable feigning a campaign for non-City office until February 1, to escape the City fundraising blackout period by raising funds for a non-City office and then transferring them to use in the City campaign.

40. The Houston City Attorney recently confirmed in writing to State Representative Sylvester Turner that, pursuant to section 18-38(b), he will be permitted to transfer an unlimited aggregate amount of funds from his state representative campaign account to a campaign for City office at the November 2015 elections, subject only to the base limits on individual contributors who contributed to Turner's non-City campaign. In other words, Turner will be able to transfer up to $5,000 from the total amount that any particular individual contributed to his state representative campaign and up to $10,000 from the total amount that any particular political committee contributed to his state representative campaign.

41. The Houston Chronicle reported in October 2014 that Sylvester Turner held a fundraiser ostensibly to raise funds for his state representative campaign but which could be re-purposed for a campaign for Houston mayor.

Verified Complaint                                     11

42.     In addition to this de-facto exception to the fundraising blackout period accessible only to holders of (or *ostensible* candidates for) non-City offices, certain City incumbents are also excepted from the blackout period.  Section 18-39, entitled "Retirement of debt by term limited candidates," provides in full that

> It is an affirmative defense to prosecution under sections 18-35 [the fundraising blackout] and 18-38 [the base limits] of this Code that:
>
> (1) The contribution is solicited or received by a candidate who is a city elective office holder and who is not eligible to again file as a candidate for his same city elective office because of the provisions of section 6a of article II of the city charter; and
>
> (2) The candidate has an existing debt for "political expenditures" that "political contributions" may be utilized to pay under the provisions of title 15 of the Texas Election Code, which debt, including the person or persons owed, the nature of each obligation owed and the specific amount of each obligation, is verified in writing by the candidate in a statement filed in the city secretary's office before the expiration of the 90-day period following the election at which the candidate was elected, as provided in section 18-35 of this Code; and
>
> (3) The solicitation and receipt of contributions is expressly limited to the retirement of the debt identified in the statement filed under item (2) of this section and expenses directly relating to the solicitation for that purpose, with any funds in excess of the debt and related expenditures being refunded to the contributors or donated to a recognized tax-exempt charitable organization formed for educational, religious or scientific purposes if the contributors cannot be located or decline to accept the refund.

*Id*. § 18-39.

43.     Thus, paradoxically, while challengers who do not currently hold any elective office are subject to the ten-month fundraising blackout contained at section 18-35(a), incumbent city officeholders may solicit and accept contributions at any time of the year, and even without limitation by the base limits, so long as that incumbent is ineligible "to again file as a candidate *for his same city elective office*" and has outstanding campaign debts which are reported as required by section 18-39(2).  *Id*. § 18-39(1) (emphasis added).

Verified Complaint                                    12

44.    The City of Houston's term limits provision states that "No person, who has already served two full terms, shall be eligible to file for that same office." HOUSTON, TEX., CHARTER art. V, § 6a. Officers term-limited with respect to one office remain eligible to run for other City office, or other non-City office.

**Penalties**

45.    Pursuant to the City of Houston code of ordinances, chapter 18, article IV, section 41, violations of any provision of article IV are punishable as provided by chapter 1, section 6 of the Code of Ordinances, which provides for a fine not exceeding $500; "provided, however, that no penalty shall be greater or less than the penalty provided for the same or a similar offense under the laws of the state. Each day any violation of this Code or of any ordinance shall continue shall constitute a separate offense." HOUSTON, TEX., CODE OF ORDINANCES ch. 1, § 6 (1985).

**Reporting requirements for candidates for City of Houston office**

46.    Candidates for City office in Houston are subject to robust reporting requirements. Chapter 254, Texas Election Code, sets out the substantive requirements for reports and the filing schedule applicable to City of Houston candidates. *See* Tex. Elec. Code. § 251.001 (defining "candidate" as used in title 15, Texas Election Code, to include all persons taking affirmative action to gain nomination or election to "public office"); *id*. § 252.005 (setting out the authority with whom a candidate's *campaign treasurer appointment* is filed, including for candidates for municipal office); *id*. § 254.066 (requiring that *reports* filed under this chapter be filed with the authority with whom the candidate's campaign treasurer appointment is filed); HOUSTON, TEX., CODE OF ORDINANCES ch. 18, art. VI, § 102 (1985) ("Report means a campaign finance report required to be filed with the city secretary by Title 15 of the Texas Election

Verified Complaint                            13

Code."); *id*. § 18-103(b) ("Each report shall contain all information required by Chapter 254, Texas Election Code.").

47.     In all years, including non-election years, candidates must file two "semiannual" reports, due on January 15 and July 15.  Tex. Elec. Code § 254.063.

48.     Candidates must file additional reports in election years.  Specifically, any candidate who is running opposed for a City office must file reports due thirty days and eight days before Election Day.  Additionally, if the candidate participates in a runoff election, the candidate must file a report no later than the eighth day before the runoff election date.  These requirements are set out as follows:

> (a) In addition to other required reports, for each election in which a person is a candidate and has an opponent whose name is to appear on the ballot, the person shall file two reports.

> (b) The first report must be received by the authority with whom the report is required to be filed not later than the 30th day before election day. The report covers the period beginning the day the candidate's campaign treasurer appointment is filed or the first day after the period covered by the last report required to be filed under this chapter, as applicable, and continuing through the 40th day before election day.

> (c) The second report must be received by the authority with whom the report is required to be filed not later than the eighth day before election day. The report covers the period beginning the 39th day before election day and continuing through the 10th day before election day.

> (d) If a person becomes an opposed candidate after a reporting period prescribed by Subsection (b) or (c), the person's first report must be received by the authority with whom the report is required to be filed not later than the regular deadline for the report covering the period during which the person becomes an opposed candidate. The period covered by the first report begins the day the candidate's campaign treasurer appointment is filed.

> (e) In addition to other required reports, an opposed candidate in a runoff election shall file one report for that election. The runoff election report must be received by the authority with whom the report is required to be filed not later than the eighth day before runoff election day. The report covers the period beginning the ninth day before the date of the main election and continuing through the 10th day before runoff election day.

Verified Complaint                              14

*Id*. § 254.064.

49.     Each report is required to contain voluminous information, as set out in section

254.031(a), Texas Election Code:

**(1) the amount of political contributions from each person that in the aggregate exceed $50 and that are accepted during the reporting period by the person or committee required to file a report under this chapter, the full name and address of the person making the contributions, and the dates of the contributions;**

(2) the amount of loans that are made during the reporting period for campaign or officeholder purposes to the person or committee required to file the report and that in the aggregate exceed $50, the dates the loans are made, the interest rate, the maturity date, the type of collateral for the loans, if any, the full name and address of the person or financial institution making the loans, the full name and address, principal occupation, and name of the employer of each guarantor of the loans, the amount of the loans guaranteed by each guarantor, and the aggregate principal amount of all outstanding loans as of the last day of the reporting period;

(3) the amount of political expenditures that in the aggregate exceed $100 and that are made during the reporting period, the full name and address of the persons to whom the expenditures are made, and the dates and purposes of the expenditures;

(4) the amount of each payment made during the reporting period from a political contribution if the payment is not a political expenditure, the full name and address of the person to whom the payment is made, and the date and purpose of the payment;

(5) the total amount or a specific listing of the political contributions of $50 or less accepted and the total amount or a specific listing of the political expenditures of $100 or less made during the reporting period;

(6) the total amount of all political contributions accepted and the total amount of all political expenditures made during the reporting period;

(7) the name of each candidate or officeholder who benefits from a direct campaign expenditure made during the reporting period by the person or committee required to file the report, and the office sought or held, excluding a direct campaign expenditure that is made by the principal political committee of a political party on behalf of a slate of two or more nominees of that party;

(8) as of the last day of a reporting period for which the person is required to file a report, the total amount of political contributions accepted, including interest or other income on those contributions, maintained in one or more accounts in which political contributions are deposited as of the last day of the reporting period;

Verified Complaint                                  15

(9) any credit, interest, rebate, refund, reimbursement, or return of a deposit fee resulting from the use of a political contribution or an asset purchased with a political contribution that is received during the reporting period and the amount of which exceeds $100;

(10) any proceeds of the sale of an asset purchased with a political contribution that is received during the reporting period and the amount of which exceeds $100;

(11) any investment purchased with a political contribution that is received during the reporting period and the amount of which exceeds $100;

(12) any other gain from a political contribution that is received during the reporting period and the amount of which exceeds $100; and

(13) the full name and address of each person from whom an amount described by Subdivision (9), (10), (11), or (12) is received, the date the amount is received, and the purpose for which the amount is received.

*Id.* § 254.031.

50.     In addition to the information required under the Election Code, the City of Houston requires that "each report shall include the **occupation and employer of each person making one or more political contributions that in the aggregate exceed $500.00 in a reporting period**." HOUSTON, TEX., CODE OF ORDINANCES ch. 18, art. VI, § 103(b) (1985) (emphasis added).

51.     Knowingly failing to file complete and timely reports is a criminal offense punishable as a Class C misdemeanor.  Tex. Elec. Code § 254.041.

52.     Even if law enforcement does not pursue a candidate for reporting failures, the Election Code vests any resident of the City of Houston with the standing to seek injunctive relief requiring a candidate or officeholder, or a specific purpose committee related to such candidate or officeholder, to file a report that was not timely filed.  *Id*. § 254.043.

Verified Complaint                                16

**Public availability of campaign finance reports**

53.     The City of Houston requires electronic filing of campaign finance reports.  The code of ordinances stipulates that all candidates, officeholders, and political committees shall file all reports "with the city secretary in electronic format utilizing the system provided by the city. Updates, corrections or amendment to any report shall be filed in like manner."  HOUSTON, TEX., CODE OF ORDINANCES ch. 18, art. VI, § 103(a) (1985).

54.     The only exception to the electronic filing requirement is for a filer who submits an affidavit affirming that (i) neither the filer, nor the person with whom the filer contracts, uses a computer to keep current records of contributions and expenditures; **and** (ii) the filer does not, in a calendar year, accept more than $20,000 in aggregate political contributions or make more than $20,000 in aggregate political expenditures.  *Id.* § 18-103(c)(1).  Thus, even a candidate with relatively minor total activity must file electronically unless she affirms under penalty of perjury that records are not kept electronically.

55.     Failure to file electronic reports when required is punishable pursuant to section 1-6 of the code of ordinances.

56.     The Code further requires the city secretary to "within two business days following the date of each report's receipt, instruct the director of Houston Information Technology Services…to post copies of all reports filed with the office of the city secretary on the city's Internet website."  *Id*. § 18-105(a).

**The fundraising blackout period is unrelated to the business calendar of the City of Houston**

57.     The fundraising blackout period challenged by Plaintiff bears no relation to the City of Houston's business calendar.  The Houston City Council conducts business year-round, as required by the city charter.  HOUSTON, TEX. CHARTER art. VII, § 3.

Verified Complaint                                        17

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

58.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

59.     Section 18-35(a) has deprived, and will continue to deprive, Gordon of his fundamental rights protected by the First and Fourteenth Amendments.  The provision likewise deprives prospective contributors to Gordon's campaign of their First and Fourteenth Amendment rights.  Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable.  Accordingly, appropriate injunctive relief and a declaration of the unconstitutionality of the statutes are necessary.

60.     Gordon faces a credible threat of prosecution if he solicits or accepts contributions for his City Council campaign prior to February 1, 2015.

61.     Gordon is not willing to expose himself and his supporters to criminal and civil penalties and thus he has been forced to refrain from engaging in core political activity—soliciting and collecting contributions to campaign for City office—pending vindication of his constitutional rights.

62.     The free speech and associational rights of others not before the Court will be similarly infringed as section 18-35(a) is applied to other candidates in the November 2015 general election in the City of Houston, as well as against candidates in future elections, and enforced by these Defendants.  *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 423-24 (5th Cir. 2014).

63.     Plaintiff Gordon will run for City of Houston office again in a future election. Unless the unconstitutionality of section 18-35(a) is recognized, Gordon's First Amendment rights will be violated in that election.

Verified Complaint                                         18

**COUNT 1**
**Section 18-35(a) imposes a temporal aggregate limit of zero dollars on political contributions that is facially unconstitutional because it is unsupported by any cognizable government interest and because it is not appropriately tailored.**

64.     Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

65.     Section 18-35(a) imposes a zero-dollar aggregate limit on solicitations by, and contributions to, City of Houston candidates for a significant period of every election cycle. This is materially different than a base limit on the amount that may be contributed by a single donor to a single recipient. Section 18-35(a) functions effectively as a limit on campaign expenditures and should be subject to the scrutiny applied to expenditure limitations. Restrictions on campaign expenditures burden political speech and are subject to strict scrutiny; that is, they must be narrowly tailored to achieve a compelling government interest. *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806 (2011); *Buckley v. Valeo*, 424 U.S. 1, 54-59 (1976) (per curiam) (striking down limit on total expenditures by federal candidates during an election cycle).

66.     Even if this Court views section 18-35(a)'s unique and severe burden as a contribution limit, contribution limits are still subject to a "rigorous standard of review." *McCutcheon*, 134 S. Ct. at 1444 (quoting *Buckley*, 424 U.S. at 29). Contribution limits may only be sustained "if the [Government] demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." *Id.* (quoting *Buckley*, 424 U.S. at 25).

67.     The prevention of actual or apparent *quid pro quo* corruption is the only government interest sufficient to justify campaign finance restrictions. *McCutcheon*, 134 S. Ct. at 1450; *see also FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496-97 (1985).

Verified Complaint                                    19

*Quid pro quo* corruption is narrowly defined, "captur[ing] the notion of a direct exchange of an official act for money." *McCutcheon*, 134 S. Ct. at 1441.

68.    The fundraising blackout period under section 18-35(a) does not further the government's interest in preventing corruption or the appearance of corruption.

69.    Unlike base contribution limits, which the Supreme Court has held may address a corruption threat, aggregate limits "seriously restrict[] participation in the democratic process" while doing "little, if anything, to address [corruption]." *Id.* at 1442.  Because section 18-35(a) imposes an aggregate limit on contributions to Gordon and similarly-situated City candidates, and because aggregate limits do not address corruption as a matter of law, section 18-35(a) is facially unconstitutional for lack any cognizable government purpose.

70.    The City of Houston's ordinance imposing a fundraising blackout period violates the First Amendment rights of speech and association of Plaintiff and of any and all persons who desire to or would contribute to Plaintiff's campaign for City Council.

71.    The blackout period also violates the First Amendment rights of members of the public, as it prevents them from hearing the views of candidates for City office who cannot raise money with which to disseminate their views.

72.    In addition to lacking any cognizable government interest, section 18-35(a) is not appropriately tailored.  Regardless whether the Court applies strict or "closely drawn" scrutiny, it "must assess the fit between the stated governmental objective and the means selected to achieve that objective.  Or to put it another way, if a law that restricts political speech does not 'avoid unnecessary abridgment' of First Amendment rights, it cannot survive 'rigorous' review." *McCutcheon*, 134 S. Ct. at 1445 (internal citations omitted).   Section 18-35(a) is not appropriately tailored for numerous reasons, including but not limited to the following: (A) the

Verified Complaint                                                20

aggregate zero dollar limit necessarily also limits contributions from *any single donor* to zero dollars, despite the fact that at other times of the year persons may contribute $5,000 and political committees may contribute $10,000, amounts which the City judges to be noncorrupting; (B) while Plaintiff Gordon is absolutely barred from fundraising, the code permit candidates for and officeholders of non-City offices to raise substantial sums during the blackout and re-purpose them for use in a City campaign; (C) certain incumbent City officeholders are excepted from the fundraising blackout, and even the base limits, for purposes of campaign debt retirement; (D) the period subject to the fundraising blackout bears no relation to the City's business calendar; (E) the City of Houston has already addressed its legitimate anticorruption interest with other measures, including base limits, absolute bans on contributions from contractors and certain litigants, bans on solicitations by members of City-appointed boards and commissions and City employees, and robust reporting requirements which divulge information about contributions to the public. The absolute temporal ban on fundraising by Plaintiff Gordon is an unnecessary abridgment of his First Amendment rights in light of the City of Houston's abject failure to tailor the provision to any threat of corruption.

73. Section 18-35(a) has deprived, and will continue to deprive, Plaintiff and others similarly situated of their fundamental rights protected by the First and Fourteenth Amendments. Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable. There is no adequate remedy at law.

Verified Complaint                          21

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.      A declaratory judgment that chapter 18, article IV, section 18-35(a) of the Code of Ordinances of the City of Houston is facially unconstitutional under the First Amendment to the United States Constitution;

2.      A declaratory judgment that chapter 18, article IV, section 18-35(a) of the Code of Ordinances of the City of Houston is unconstitutional under the First Amendment to the United States Constitution as applied to Plaintiff and Plaintiffs' proposed contributors;

3.      A preliminary and permanent injunction enjoining Defendants from enforcing chapter 18, article IV, section 18-35(a) of the Code of Ordinances of the City of Houston against Plaintiff or against any other candidate for City of Houston office;

4.      An award of nominal damages for the violation of Plaintiff's constitutional rights;

5.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 or any other applicable statute or authority; and

6.      Any other relief that the Court deems just and appropriate.

Dated November 4, 2014.

Respectfully submitted,


____/s/ Jerad Najvar_____
Jerad Wayne Najvar
Texas Bar No. 24068079
NAJVAR LAW FIRM
4151 Southwest Freeway, Suite 625
Houston, TX 77027
281.404.4696 phone
281.582.4138 fax
jerad@najvarlaw.com
*Counsel for Plaintiff*


Verified Complaint                                22