IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRENT TREBOR GORDON,       §
    Plaintiff,          §
                 §
v.                         §  CIVIL ACTION NO. H-14-3146
                 §
CITY OF HOUSTON, TEXAS, and §
ANNISE PARKER, in Her Official §
Capacity as Mayor of the City §
of Houston, Texas,         §
                 §
    Defendants.            §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Brent Trebor Gordon, brings this action against
defendants, the City of Houston, Texas, and Mayor Annise Parker in
her official capacity, for violation of rights protected by the
First and Fourteenth Amendments of the United States Constitution.
Gordon alleges that a temporal ban on soliciting and receiving
contributions imposed on candidates for city elective office by
Chapter 18, Article IV, § 18-35(a) of the City of Houston Code of
Ordinances ("COH Ordinance § 18-35(a)") "stifles core political
activity and prevents candidates from raising funds to run
effective campaigns, yet it does not further the only legitimate
governmental interest relevant in this area, i.e., the prevention
of corruption or its appearance."[1]  Gordon seeks declaratory
judgment that COH Ordinance § 18-35(a) is unconstitutional on its
face and as applied to him and to his potential contributors.

---

[1]Plaintiff's Verified Complaint ("Verified Complaint"), Docket
Entry No. 1, p. 2 ¶ 1.

Gordon also seeks to enjoin defendants from enforcing COH Ordinance § 18-35(a), nominal damages for violation of his constitutional rights, reasonable costs and attorney's fees.[2] Pending before the court are Plaintiff's Motion for Preliminary Injunction (Docket Entry No. 2), Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss for Failure to State a Claim (Docket Entry No. 11), and Defendants' Motion for Summary Judgment (Docket Entry No. 15). For the reasons stated below, defendants' motions to dismiss and for summary judgment will be denied, and Gordon's motion for preliminary injunction will be granted.

## I. **Factual Background**

The ordinance that Gordon seeks to have declared unconstitutional both on its face and as applied to him and his potential contributors, COH Ordinance ¶ 18-35(a), is found in the chapter of the City of Houston Code of Ordinances that governs Ethics and Financial Disclosure. The subject ordinance provides:

> A candidate for city office at a city general election may neither solicit nor receive contributions except during a period commencing on the 1st day of February prior to the day of the election, and ending on the 4th day of March following the election date for the race that the candidate has entered. In the event that the candidate should be in a run-off election, the final date to receive or solicit contributions shall be the 4th day of April following the election date.

---

[2]Id. at 22.

COH Ordinance § 18-35(a).[3] The subject ordinance is one of several restrictions on solicitations and contributions that Chapter 18, Article IV of the City of Houston Code of Ordinances makes "applicable to all candidates and persons making contributions to candidates." COH Ordinance § 18-31(a). Gordon's statement of definite intent to run for an at-large position on Houston City Council in the November 2015 election,[4] makes Gordon a "candidate" for "city elective office" as those terms are defined in COH Ordinance § 18-2.[5] Pursuant to COH Ordinance § 18-41, violations

---

[3]"City Council members are elected every two years, in odd-numbered years." Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss for Failure to State a Claim and Memorandum of Law in Support ("Defendants' Motion to Dismiss"), Docket Entry No. 11, pp. 10-11 (citing Houston City Charter, Article V, § 5). The period during which candidates are allowed to solicit and receive contributions extends from February 1st of election years to March 4th of non-election years. Because the city's elections are held in November, candidates have from February 1st to election day in November to solicit and receive contributions immediately prior to an election, i.e., a period of approximately nine months. Candidates are allowed to continue soliciting and receiving contributions until March 4th of the next year, i.e., for a post-election period of approximately four months. Candidates are then banned from soliciting and receiving contributions from March 4th of the non-election year to February 1st of the next election year, i.e., a period of approximately eleven months.

[4]Verified Complaint, Docket Entry No. 1, 3 ¶ 5 at 4 ¶ 8.

[5]City of Houston Code of Ordinances Chapter 18, Article I, § 2 provides in pertinent part:

*Candidate* means a person who knowingly and willingly takes affirmative action for the purpose of gaining election to city office . . . Examples of affirmative action include: . . . (4) The making of a public announcement of a definite intent to run for city office

(continued...)

of all provisions of Article IV — including COH Ordinance § 18-35(a) — "shall be punishable as provided in section 1-6 of this Code." COH Ordinance § 1-6 provides for a fine not exceeding $500, and also provides that "[e]ach day any violation of this Code or of any ordinance shall continue shall constitute a separate offense."

## II. **Defendants' Motions to Dismiss**

Defendants argue that this action is subject to dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[6]

---

[5](...continued)
in a particular election, regardless of whether the specific office is mentioned in the announcement; (5) Before a public announcement of intent, the making of a statement of definite intent to run for city office and the soliciting of support by letter or other mode of communication; . . .

*City elective office* means the offices of the mayor, the various city council positions and the city controller.

See also Verified Complaint, Docket Entry No. 1, pp. 3 ¶ 5 (stating Gordon's definite intent to run for city elective office); Defendant City of Houston's Responses to Plaintiff's Second Set of Discovery Requests, Exhibit 17 to Plaintiff's Reply in Support of Motion for Preliminary Injunction, Docket Entry No. 13-1, p. 15 of 23 (stating "[i]t is not our contention that Mr. Gordon is not a candidate at this time"); Defendant's Annise Parker, in her official capacity as Mayor of the City of Houston, Tex., Responses to Plaintiff's Second Set of Discovery Requests, Docket Entry No. 13-1, p. 20 (same).

[6]Defendants' Motion to Dismiss, Docket Entry No. 11, p. 7.

4

## A.    Rule 12(b)(1) Does Not Require Dismissal

Defendants argue that this action is subject to dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because

> Gordon lacks standing because he can show no more than a "subjective chill" of his First Amendment rights as a potential candidate — he cannot show a personal stake in the outcome of the controversy so as to "warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."[7]

### 1.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.   "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998).  "Courts may dismiss for lack of subject matter jurisdiction on the basis of (1)  the  complaint  alone;  (2)  the  complaint  supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Clark v. Tarrant County, Texas, 798 F.2d 736, 741 (5th Cir. 1986).

---

[7]Id. at 5 (quoting Warth v. Seldin, 95 S. Ct. 2197, 2205 (1975)). See also id. at 7 ("Gordon lacks standing because he does not demonstrate that his political speech is prohibited conduct under the Ordinance and because, at best, he can only allege a 'subjective chill' of his First Amendment rights").

5

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction in fact -- irrespective of the pleadings -- and matters outside the pleadings -- such as testimony and affidavits -- are considered. Id. Because defendants have cited evidence outside the pleadings in support of their Rule 12(b)(1) motion to dismiss, the motion is a factual attack, and the court's review is not limited to whether the complaint sufficiently alleges jurisdiction. Gordon, as the party asserting federal jurisdiction, bears the burden of showing that the jurisdictional requirements have been met. Alabama-Coushatta Tribe of Texas v. United States, 757 F.3d 484, 487 (5th Cir. 2014). When facing a challenge to subject matter jurisdiction and other challenges on the merits, courts must consider the Rule 12(b)(1) jurisdictional challenge before addressing the merits of the case. Id.

2. Gordon Has Standing

(a) Applicable Law

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and

'Controversies.'" United States Parole Commission v. Geraghty, 100 S. Ct. 1202, 1208 (1980). "[T]he requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III." National Federation of the Blind of Texas, Inc. v. Abbott, 647 F.3d 202, 208 (5th Cir. 2011) (quoting Davis v. Federal Election Commission, 128 S. Ct. 2759, 2768 (2008)). Thus, Gordon must have standing to proceed. To establish standing, Gordon must show that: (1) he has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury-in-fact is fairly traceable to the defendants' conduct; and (3) a favorable judgment is likely to redress the injury-in-fact. Justice v. Hosemann, 771 F.3d 285, 291 (5th Cir. 2014). See also Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992).


(b) Application of Law to the Facts

Defendants argue that Gordon lacks standing to pursue this action in federal court "because he cannot link the [challenged o]rdinance to any harm."[8] Defendants argue that Gordon has failed to establish standing because

> Gordon can show no harm that [is] traceable to the Defendants' challenged behavior and likely to be redressed by a favorable ruling. Gordon complains his freedom of speech is restricted because Section 18-35(a) of the Code precludes him from soliciting and receiving

---

[8]Id. at 10.

campaign contributions prior to February 1, 2015. However, the limitation on his free speech is self-imposed. Gordon chooses not to speak and chooses not to self-fund his campaign at this stage. (Ex. 1 at 21:10-20). The Ordinance does not prohibit Gordon from campaigning, including making speeches, meeting with voters, and speaking on social media websites like Twitter and Facebook. (Ex. 1 at 74:13-17, 19:4-22:4). Nor does the Ordinance preclude Gordon from expending undisbursed funds from his prior campaign for City Council At-Large Position 2.[9]

Asserting that self-censorship is a harm that can be alleged without actual prosecution, Gordon argues that he has standing because he has alleged an

intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by law. . . That is, Gordon desires to immediately solicit and receive contributions related to his campaign for City of Houston City Council at large, and at present six individuals have verified their intent to immediately contribute to Gordon's campaign, but these contributions have not been solicited, made or accepted because such activity is proscribed by Houston's contribution blackout period.[10]

### (1)  Injury-in-Fact

The First Amendment to the United States Constitution declares that "Congress shall make no law . . . abridging the freedom of speech." United States Constitution, Amendment I. The Supreme Court has observed that "[s]peech is an essential mechanism of democracy, for it is the means to hold officials accountable to the

---

[9]Id. at 12-13.

[10]Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 14, p. 2 (citing Babbitt v. United Farm Workers National Union, 99 S. Ct. 2301, 2309 (1979)).

8

people," Citizens United v. Federal Election Commission, 130 S. Ct. 876, 898 (2010), and that "[t]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." Id. (quotations omitted). "In First Amendment pre-enforcement challenges, chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." Justice, 771 F.3d at 291 (quotations omitted). Both the Supreme Court and the Fifth Circuit have explained that "it is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statue that he claims deters the exercise of his constitutional rights." Id. (quoting Steffel v. Thompson, 94 S. Ct. 1209, 1216 (1974)). "Instead, once a plaintiff has shown more than a 'subjective chill' — that is, that he 'is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure' — the case presents a viable 'case or controversy' under Article III." Id. (quoting International Society for Krishna Consciousness of Atlanta v. Eaves, 601 F.2d 809, 815 (5th Cir. 1979)). See also Virginia v. American Booksellers Association, Inc., 108 S. Ct. 636, 643 (1988) ("[T]he alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.").

In Babbitt v. United Farm Workers National Union, 99 S. Ct. 2301, 2309 (1979), the Supreme Court stated that a threat

of enforcement is concrete enough to establish an injury-in-fact when the plaintiff demonstrates three conditions: (1) an intent to engage in actions that are "arguably affected with a constitutional interest," (2) a statute, regulation, or other provision that "arguably" prohibits those actions, and (3) a credible threat of prosecution. See also National Federation of the Blind of Texas, Inc. v. Abbott, 647 F.3d 202, 209 (5th Cir. 2011) ("To prove an injury in fact sufficient to raise a First Amendment facial challenge . . . a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.").

Gordon alleges in his Verified Complaint that he "will run for Houston City Council at-large at the November 2015 election,"[11] that he "cannot self-fund his campaign,"[12] that "[w]ithout the ability to raise contributions, [he] cannot pay for activities that he would otherwise immediately undertake, such as . . . printing and distributing campaign materials,"[13] that "[b]ut for the absolute ban on fundraising under section 18-35(a), [he] would immediately solicit and accept contributions to support his campaign for City

---

[11]Verified Complaint, Docket Entry No. 1, p. 4 ¶ 8.

[12]Id. at ¶ 11.

[13]Id. at 4-5 ¶ 12.

10

Council,"[14] and that "but for the absolute ban on fundraising under section 18-35(a), many individuals . . . would immediately contribute funds to support [him] in his campaign."[15] Gordon also alleges that he "faces a credible threat of prosecution if he solicits or accepts contributions for his City Council campaign prior to February 1, 2015,"[16] and that he

> is not willing to expose himself and his supporters to
> criminal and civil penalties and thus he has been forced
> to refrain from engaging in core political activity —
> soliciting and collecting contributions to campaign for
> City Office — pending vindication of his constitutional
> rights.[17]

Defendants do not dispute — and, in fact, acknowledge — that in an effort to avoid violating COH Ordinance 18-35(a), Gordon has self-censored his campaign activities.[18] Moreover, defendants neither dispute Gordon's assertion that the prohibitions against soliciting and receiving contributions imposed on candidates for city elective office by COH Ordinance § 18-35(a) apply to him because he is a candidate for city office, nor represent that they would decline to enforce COH Ordinance § 18-35(a) against Gordon

---

[14]Id. at 5 ¶ 13.

[15]Id. at ¶ 14.

[16]Id. at 18 ¶ 60.

[17]Id. at ¶ 61.

[18]Defendants' Motion to Dismiss, Docket Entry No. 11, pp. 12-13. Violations of COH Ordinance 18-35(a) are punishable by a fine of up to $500 per day. See above, § I (citing COH Ordinances § 1-6 and § 18-41).

should he solicit or accept campaign contributions in contravention thereto. Instead, defendants argue that the temporal ban on soliciting and receiving contributions causes Gordon no cognizable harm because Gordon does not have a right to receive contributions protected by the First Amendment, and because Gordon has other opportunities to engage in political speech and association during the period of the temporal ban that he has voluntarily chosen not to pursue, i.e., he may spend his own funds or funds left over from his previous campaign, and he may use free social media.[19]

Defendants' arguments that Gordon has failed to demonstrate an injury-in-fact sufficient to satisfy that requirement for standing either because the First Amendment does not protect a candidate's right to receive contributions, or because the temporal ban on soliciting and receiving contributions imposed by the challenged ordinance does not prohibit Gordon from engaging in other forms of political speech and association, have no merit. In Catholic Leadership Coalition of Texas v. Reisman, 764 F.3d 409, 423 (5th Cir. 2014), the Fifth Circuit recognized that "both the contributing and contributed-to party have sufficient injuries-in-fact to challenge campaign finance restrictions." Observing that the limitations challenged in that case "must rise or fall on their own merits," id. at 431, the Fifth Circuit rejected the State of

_____

[19]Defendants' Motion to Dismiss, Docket Entry No. 11, pp. 12-13.

12

Texas's argument that a 60-day waiting period was narrowly tailored "because interested speakers have many other opportunities for speaking during the 60-day period." Id. at 430.

Because Gordon has censored his political speech to avoid violating COH Ordinance § 18-35(a), and because defendants neither dispute that the temporal restrictions on soliciting and receiving contributions imposed on candidates for city elective office by COH Ordinance § 18-35(a) apply to Gordon, nor disavow an intent to enforce that ordinance against Gordon should he act in contravention of it by soliciting or accepting contributions before February 1, 2015, Gordon has shown all of the conditions identified by the Supreme Court in Babbitt for demonstrating a threat of enforcement that is concrete enough to establish an injury-in-fact are satisfied in this case. See Babbitt, 99 S. Ct. at 2309 (a threat of enforcement is concrete enough to establish an injury-in-fact when the plaintiff demonstrates three conditions: (1) an intent to engage in actions that are "arguably affected with a constitutional interest," (2) a statute, regulation, or other provision that "arguably" prohibits those actions, and (3) a credible threat of prosecution). Accordingly, the court concludes that Gordon has shown more than a "subjective chill," and has, instead, demonstrated a chilling of his political speech sufficient to satisfy the injury-in-fact requirement for standing under Article III. See Justice, 771 F.3d at 291 ("In First Amendment

pre-enforcement challenges, 'chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.'"). See also Laird v. Tatum, 92 S. Ct. 2318, 2324 (1972) ("[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights."); Hill v. City of Houston, Texas, 789 F.2d 1103, 1106 (5th Cir. 1986)(en banc)("where there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged"). The court's conclusion that Gordon has demonstrated an injury-in-fact for the purpose of establishing standing under Article III is buttressed by the Sixth Circuit's recent decision in Platt v. Board of Commissioners on Grievances and Discipline of the Ohio Supreme Court, 769 F.3d 447 (6th Cir. 2014). In Platt the plaintiff wanted to run for judicial office. The judicial canons prohibited candidates from soliciting funds in person and engaging in other conduct. Because the plaintiff had to "censor himself to avoid violating" the Ohio canons, the Sixth Circuit concluded that the canons created what "amount[ed] to a credible fear of enforcement." Id. at 452. The same is true of Gordon. And, as here, the Platt court relied on the defendants' failure to disavow enforcement against the plaintiff. Id.

**(2)   Causal Connection and Redressability**

Because threatened enforcement of COH Ordinance § 18-35(a) arguably chills Gordon's exercise of his First Amendment rights to freedom of speech and association by soliciting and receiving campaign contributions, a causal connection exists between Gordon's alleged injury-in-fact and the challenged ordinance.   Because if warranted, the court may issue a declaratory judgment that the challenged ordinance is unconstitutional, and may enjoin enforcement of that ordinance, Gordon's alleged injury could be redressed by a favorable judgment in this suit.   See Justice, 771 F.3d at 291; Lujan, 112 S. Ct. at 2136.


3.   Conclusion

Defendants' motion to dismiss for lack of standing under Rule 12(b)(1) will be denied because Gordon has established an injury-in-fact, a causal connection between his injury and the challenged ordinance, and that a favorable judgment will redress his injury.[20]

---

[20]A footnote in Gordon's Verified Complaint asserts that "Plaintiff Gordon has standing to assert not only his right as [a] candidate to receive contributions, but also the rights of persons who would contribute to him but for the prohibition challenged here."   Docket Entry No. 1, p. 5, n.2.   However, during his deposition, Gordon admitted that he has no authority to act as a representative of any of his potential contributors.   See Oral Deposition of Brent Trebor Gordon, Docket Entry No. 13-1, pp. 43:8-14). Gordon, therefore, has no standing to pursue this action on behalf of his potential contributors.

**B.   Rule 12(b)(6) Does Not Require Dismissal**

Count 1, the only count asserted in Gordon's Verified Complaint, alleges that "Section 18-35(a) imposes a temporal aggregate limit of zero dollars on political contributions that is facially unconstitutional because it is unsupported by any cognizable government interest and because it is not appropriately tailored."[21]   Citing <u>Ohio Council 8 American Federation of State, County & Municipal Employees, AFL-CIO v. Brunner</u>, 912 F. Supp.2d 556 (S.D. Ohio 2012), and <u>Thalheimer v. City of San Diego</u>, 645 F.3d 1109 (9th Cir. 2011), defendants argue that "Gordon does not cite any case holding that the First Amendment broadly protects a candidate's right to solicit or receive campaign contributions. Indeed, several cases hold otherwise."[22]


1.   <u>Standard of Review</u>

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert.</u>

---

[21]Verified Complaint, Docket Entry No. 1, p. 19.

[22]Defendant's Motion to Dismiss, Docket Entry No. 11, p. 14.

16

denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).

2. Gordon Has Stated a Claim for Which Relief May Be Granted

Defendants' contention that Gordon has failed to state a claim for which relief may be granted because the First Amendment does not protect a candidate's right to solicit or receive contributions has no merit, and defendants' reliance on out of circuit cases such as Ohio Council, 912 F. Supp.2d at 556, and Thalheimer, 645 F.3d at 1109, is misplaced because neither case involved a motion to dismiss but, instead, cross-motions for summary judgment.

In United States v. Kokinda, 110 S. Ct. 3115 (1990), the Supreme Court stated that "[s]olicitation is a recognized form of speech protected by the First Amendment." Id. at 3118 (citing

17

<u>Schaumberg v. Citizens for a Better Environment</u>, 100 S. Ct. 826, 832 (1980), and <u>Riley v. National Federation of Blind of North Carolina, Inc.</u>, 108 S. Ct. 2667, 2673-74 (1988)). Although these cases involved solicitations and free speech rights asserted by charitable organizations, the rights at issue here — rights of free speech and association asserted by a candidate for elective office — implicate fundamental activities protected by the First Amendment. <u>See</u> <u>Buckley v. Valeo</u>, 96 S. Ct. 612, 632 (1976) (per curiam)("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression . . ."). Thus, in the context of political speech, statutory "contribution and expenditure limitations operate in an area of the most fundamental First Amendment activities." <u>Id.</u> <u>See also</u> <u>id.</u> at 634 ("A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached.").

Moreover, both state and federal courts have long recognized the ability of candidates for elective office to assert First Amendment challenges to restrictions imposed on their rights to solicit and receive contributions. <u>See</u> <u>e.g.</u>, <u>Carey v. Wolnitzek</u>,

614 F.3d 189, 204 (6th Cir. 2010) ("Prohibiting candidates from asking for money suppresses speech in the most conspicuous of ways."); Zeller v. The Florida Bar, 909 F. Supp. 1518 (S.D. Fla. 1995)(holding unconstitutional prohibitions on contributions made more than one year before judicial elections); State v. Dodd, 561 So.2d 263 (Fla. 1990) (holding unconstitutional law banning candidates for legislative or statewide office from soliciting or accepting any campaign contributions during regular or special session of the state legislature).

In Thalheimer, which defendants describe as "the case that most closely resembles the facts of this case,"[23] the candidate plaintiff challenged the City of San Diego's 12-month limitation on soliciting or accepting contributions. The district court denied the plaintiff's motion for preliminary injunction, Thalheimer v. City of San Diego, 706 F. Supp.2d 1065, 1078-79 (S.D. Cal. 2010), and the Ninth Circuit affirmed that denial. Thalheimer, 645 F.3d at 1121-24. Upon remand the parties submitted cross-motions for summary judgment, and the district court upheld the 12-month limitation on soliciting or accepting contributions after finding that the limitation was "closely drawn to serve the City's anti-corruption interest." Thalheimer, 2012 WL 177414 at *11. At issue was whether the ordinance was closely drawn to advance a sufficiently important governmental interest. The fact that the

---

[23]Id. at 17.

19

challenged ordinance restricted rights protected by the First Amendment was not in dispute. See Thalheimer, 706 F. Supp.2d at 1079 (finding "temporal limits do burden free speech and association"); Thalheimer, 645 F.3d at 1122 (expressly stating that "the district court reasonably found that '. . . temporal limits do burden free speech and association.'").

In Ohio Council a labor organization, three judicial candidates, and a political party challenged a rule of the Ohio Code of Judicial Conduct that prohibited candidates from personally soliciting campaign contributions except in writing or when speaking to groups of 20 or more individuals as violating their rights under the First Amendment. Upon the submission of cross-motions for summary judgment, the court held that the challenged restriction was narrowly tailored to advance compelling state interests in preserving the appearance of impartiality and preventing coercion, but was unconstitutional as applied to the extent that it prevented judicial candidates from personally soliciting contributions from family members. Thus, as in Thalheimer, at issue was whether the ordinance was closely drawn to advance a sufficiently important governmental interest. The fact that the challenged ordinance restricted rights protected by the First Amendment was not in dispute.

After stating its holding the Ohio Council court made

[o]ne final observation: Plaintiffs assert that Rule 4.4(A)'s prohibition on their personal *receipt* of

20

campaign contributions violates their rights under the
First Amendment. However, the Court is unaware of any
legal support for a conclusion that candidates have a
First Amendment right to personally receive campaign
contributions. While the Supreme Court has stated that
limits placed on public campaign *expenditure* and
*contributions* "implicate fundamental First Amendment
interests," it made no such finding with respect to
*receipt* of campaign contributions. *Buckley v. Valeo,* 424
U.S. 1, 23, 96 S. Ct. 612, 46 L. Ed.2d 659 (1976). This
Court will not simply suppose that the Supreme Court
would hold that the political expression inherent in
spending and contributing money is likewise present in a
candidate's personal receipt of money. *See, e.g., Dean v.
Blumenthal,* 577 F.3d 60, 70 (2d Cir.2009) (discussing
*Randall v. Sorrell,* 548 U.S. 230, 126 S. Ct. 2479, 165 L.
Ed.2d 482 (2006), in which the Supreme Court held that
Vermont's campaign finance statute's expenditure limits
for candidates and contribution limits for individuals,
organizations, and political parties violated First
Amendment free speech protections but did not recognize
a First Amendment right to receive campaign
contributions).

912 F. Supp.2d at 572. The fact that the court was unaware of any

legal support for the conclusion that candidates have a First

Amendment right to personally receive campaign contributions did

not prevent the court from reaching the merits of the plaintiffs'

claims, and does not support a conclusion that no such right

exists. In Dean, 577 F.3d at 569, one of the cases cited in Ohio

Council, the court acknowledged that although the Supreme Court's

opinion in Randall, 126 S. Ct. at 2479, did not recognize a First

Amendment right to receive campaign contributions, its analysis did

not foreclose such recognition. See Libertarian National

Committee, Inc. v. Federal Election Commission, 930 F. Supp.2d 154,

21

171 (D.D.C. 2013) (characterizing as non-frivolous argument that First Amendment right to receive campaign contributions exists).

The Fifth Circuit has arguably recognized a First Amendment right to accept contributions for the purpose of funding political speech. In Catholic Leadership Coalition, 764 F.3d at 423, the Fifth Circuit stated that "[b]oth the contributing and contributed-to party have sufficient injuries-in-fact to challenge campaign finance restrictions." Likewise, in Texans for Free Enterprise v. Texas Ethics Commission, 732 F.3d 535 (5th Cir. 2013), the Fifth Circuit held that a political committee formed to advocate for candidates in Texas elections had shown a substantial likelihood of success on the merits of its claim that "the Texas Election Code violates its right to free speech by prohibiting it from accepting funds from corporations." Id. at 537. Moreover, in In re Cao, 619 F.3d 410, 421 (5th Cir. 2010), cert. denied, 131 S. Ct. 1718 (2011) (en banc) the Fifth Circuit reached the merits of a candidate's constitutional challenge to a law that banned him from receiving contributions in the form of coordinated expenditures. Although defendants attempt to distinguish Catholic Leadership by arguing that it involved an entity seeking to accept funds for the purpose of making independent expenditures,[24] also at issue there and in Texans for Free Enterprise, was whether the government had sufficient interests for restricting a right to accept

---

[24]Id. at 7-8, 16-17.

contributions to fund political speech, and, if so, whether the challenged laws advanced that interest using means that were sufficiently tailored.

### 3.  Conclusion

Defendants have failed to cite any controlling or persuasive authority that supports their contention that this action should be dismissed for failure to state a claim for which relief may be granted because the First Amendment does not protect the rights of candidates for elective office, like Gordon, to solicit and receive campaign contributions. Accordingly, defendants' motion to dismiss under Rule 12(b)(6) will be denied.

## III. **Defendants' Motion for Summary Judgment**

Acknowledging that "the facts are disputed and the evidence is contradictory," defendants argue that they are nevertheless entitled to summary judgment because "Gordon has not shown he has an unqualified First Amendment entitlement to solicit or receive contributions as a candidate.""[25]  Defendants argue that "[s]ummary judgment is warranted because the restriction Gordon challenges does not violate his First Amendment rights and is not facially

---

[25]Defendants' Motion for Summary Judgment, Docket Entry No. 15, p. 2.

23

unconstitutional."[26]   Asserting that "[t]he Ordinance's temporal limitation is narrow in scope and designed to minimize *quid pro quo* corruption or the appearance thereof,"[27] defendants argue that this case should be dismissed because "Gordon's First Amendment rights are not violated by the Ordinance."[28]

## A.   Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

---

[26] Id.

[27] Id. at 8.

[28] Id.

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (quoting <u>Celotex</u>, 106 S. Ct. at 2553). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that facts exist over which there is a genuine issue for trial. <u>Id.</u> "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Id.</u> A party opposing summary judgment must point to an evidentiary conflict in the record. Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000).

## B. Applicable Law

For the reasons stated above in § II.A.2(b)(1) and § II.B.2, the court has already concluded that the rights at issue in this case are the right to free speech (including political speech), and

25

association (including political association), and that these rights implicate fundamental activities protected by the First Amendment. See Buckley, 96 S. Ct. at 632. A campaign finance law that burdens these First Amendment rights must pass constitutional muster. Moreover, "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." McCutcheon v. Federal Election Commission, 134 S. Ct. 1434, 1452 (2014) (quoting United States v. Playboy Entertainment Group, Inc., 120 S. Ct. 1878, 1888 (2000)).

Generally, laws that burden political speech are subject to strict scrutiny, which requires governmental defendants to prove that the challenged law "promotes a compelling interest and is the least restrictive means to further the articulated interest." Catholic Leadership, 764 F.3d at 424 (quoting McCutcheon, 134 S. Ct. at 1444). But where the challenged law limits only the amount that any one person or group may contribute directly to a candidate, governmental defendants bear a lesser burden of proving only that the challenged law serves "a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." Id. See also Buckley, 96 S. Ct. at 638; Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, 131 S. Ct. 2806, 2817 (2011) (noting that lower level of scrutiny requiring that challenged law be "closely drawn" to serve a "sufficiently important interest" has been applied to

limits on contributions to candidates). For purposes of "defending expenditure and contribution limits, the Supreme Court 'has identified only one legitimate governmental interest . . .: preventing corruption or the appearance of corruption.'" <u>Catholic Leadership</u>, 764 F.3d at 425 (quoting <u>McCutcheon</u>, 134 S. Ct. at 1450). Moreover, "[r]ecent Supreme Court case law clarifies that the government's interest in preventing corruption is limited to preventing *quid pro quo* corruption or its appearance." <u>Id.</u> (citing <u>McCutcheon</u>, 134 S. Ct. at 1450-51). "[I]n determining whether the government has demonstrated a legitimate interest in preventing *quid pro quo* corruption or its appearance, a court cannot 'accept[] mere conjecture as adequate to carry a First Amendment burden.'" <u>Id.</u> (quoting <u>McCutcheon</u>, 134 S. Ct. at 1452).

## C. **Application of Law to the Facts**

Asserting that "City Council passed the restriction[s at issue] to 'eliminate any undue influence,'"[29] and that

> [t]he stated policy of Chapter 18 of the City's Code of Ordinances, regarding campaign ethics and financial disclosures, is to address improprieties such as *quid pro quo*, that, is, "the granting and exchanging of favored treatment to persons, businesses, or organizations," and "conflicts of interest such as use of offices or employment for private gain,"[30]

---

[29]<u>Id.</u> at 12.

[30]<u>Id.</u> at 12-13. <u>See also</u> <u>id.</u> at 16 ("The challenged Ordinance serves a sufficiently important government interest by preventing
(continued...)

defendants argue that "[t]he challenged Ordinance is closely drawn to avoid unnecessary abridgement of associational freedoms."[31] Without disputing that defendants have a legitimate interest in preventing corruption or its appearance,[32] Gordon argues that defendants are not entitled to summary judgment because they have failed to cite evidence establishing that the temporal restrictions at issue either advance that interest or constitute means to advance that interest that are closely drawn to avoid unnecessary abridgment of rights protected by the First Amendment.[33] Id.

Defendants' interest in preventing corruption or its appearance is a "compelling" or "sufficiently important" interest, but defendants have failed to present evidence that the ten-month temporal ban on soliciting and receiving contributions imposed by the challenged ordinance either advances that interest or does so through means that are closely drawn to avoid unnecessary abridgment of rights protected by the First Amendment.

_____

[30](...continued)
quid pro quo corruption or the appearance thereof.").

[31]Id. at 17.

[32]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 16, p. 11.

[33]Id. at 11-25.

1. Defendants Fail to Present Evidence Showing that Temporal
   Ban Advances Quid Pro Quo Corruption or Its Appearance

Defendants argue that

> the City's legislative body passed the challenged
> provision to address "undue influence." As the Ninth
> Circuit found in *Thalheimer v. City of San Diego*, 645
> F.3d 1109 (9th Cir. 2011), a legislative body may validly
> determine that the more remote from the election day that
> contributions are made, the greater risk of *quid pro quo*
> corruption or the appearance thereof. *Id.* at 1121-22.

> Here, candidates for City offices serve a two-year term.
> The limitation on soliciting or receiving contributions
> prior to February of the election year limits the
> likelihood of *quid pro quo* corruption or its appearance
> by restricting a candidate from soliciting or receiving
> contributions made at a remote time period from the
> election. Instead, the limitation requires candidates to
> solicit or receive contributions proximate to an
> imminently approaching election. The challenged
> provision serves to prevent "undue influence" . . . and
> to discourage such improprieties as "conflicts of
> interest such as use of offices or employment for private
> gain, the granting and exchanging of favored treatment to
> persons, businesses, or organizations, and the conduct of
> activities that engender opportunities to influence
> government decisions for personal gain . . ."[34]

Defendants also argue that

> [a] temporal limit on contributions, as opposed to
> expenditures, that effectively requires candidates to use
> their own funds to campaign for some period of time, as
> Gordon contends, acts to "reduce[] the threat of
> corruption" because "the use of personal funds reduces
> the candidate's dependence on outside contributions and
> thereby counteracts the coercive pressures and attendant
> risks of abuse of money in politics.[35]

---

[34]Defendants' Motion for Summary Judgment, Docket Entry No. 15,
at 2-3 (quoting COH Ordinance § 18-1).

[35]Id. at 13 (quoting Bennett, 131 S. Ct. at 2826).

Defendants argue that the temporal ban at issue advances the city's interest of preventing quid pro quo corruption and its appearance by barring candidates from soliciting or receiving contributions made remote in time from an election, requiring candidates to solicit or receive contributions proximate to an imminently approaching election, and thus requiring candidates to use their own personal funds to campaign at other times. Missing, however, from defendants' briefing is a citation to any evidence showing a nexus between the ordinance's almost eleven-month temporal ban on soliciting and receiving contributions — from March of the off-election year through January of the election year — and any activity arguably posing a risk of quid pro quo corruption or its appearance. Also missing from defendants' briefing is a citation to any evidence showing how contributions given before February 1st of an election year present a different threat of quid pro quo corruption or its appearance from those given after February 1st.[36]

Instead of presenting evidence showing how or why the temporal ban imposed by COH Ordinance § 18-35(a) advances the city's

_____

[36]See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 16, p. 19 ("Houston claims that its law imposing a temporal ban, which is completely unrelated to any threat of large financial transfers, fights corruption, but has not offered any evidence of a single corrupting instance, or any evidence to illustrate how contributions given during the blackout period would present any different a threat than those given after February 1.").

interest of preventing quid pro quo corruption or the appearance of such corruption, defendants cite Thalheimer, 645 F.3d at 1122, and argue that the Ninth Circuit and a California District Court have upheld a 12-month temporal limitation on contributions prior to elections similar to the temporal ban at issue here.  Asserting that the courts in the Thalheimer case "accepted the city's rationale that limiting 'off-year' contributions to candidates reduces actual and perceived corruption,"[37] defendants urge the court to do the same here.  A crucial distinction between Thalheimer and this case is that in Thalheimer the City of San Diego presented evidence that remote contributions are more likely to create an appearance of corruption; the City of Houston has not presented any such evidence in this case.  "[I]n determining whether the government has demonstrated a legitimate interest in preventing *quid pro quo* corruption or its appearance, a court cannot 'accept[] mere conjecture as adequate to carry a First Amendment burden.'"  Catholic Leadership, 764 F.3d at 425 (quoting McCutcheon, 134 S. Ct. at 1452).  Accordingly, the court concludes that defendants have failed to establish that the temporal ban on soliciting and receiving contributions imposed by the challenged ordinance advances the city's interest in preventing quid pro quo corruption or its appearance.

---

[37]Defendants' Motion for Summary Judgment, Docket Entry No. 15, pp. 14-15.

2. <u>Defendants Fail to Present Evidence that Temporal Ban Is Closely Drawn to Avoid Infringement of First Amendment Rights</u>

Defendants argue that

> [t]he challenged Ordinance is closely drawn to avoid unnecessary abridgement of associational freedoms. Far from being an absolute ban on soliciting or accepting contributions, the challenged ordinance is narrow in its scope, merely setting a time frame in which individual candidates may solicit or accept those contributions, and does not limit the amount of contributions overall, nor does it provide so short a window for robust campaigning to occur. The Ordinance allows more than nine months of fundraising before an election and four months after the election is held. There is no prohibition on general-purpose political action committees soliciting or accepting funds, nor is there any prohibition on any candidate expending funds. There is no impingement on a candidate's freedom of association or speech prior to the fundraising period, as Gordon shows by his use of FaceBook and Twitter and by his complaint that Ben Hall is currently campaigning for Mayor. There is no limitation on Gordon's First Amendment rights under the challenged provision.[38]

Defendants argue that the temporal ban at issue is not an absolute ban on soliciting or accepting contributions but, instead, acts merely to delay collection of contributions until a time closer to an election,[39] and does not provide too short a window for robust campaigning to occur. Defendants do not and cannot dispute, however, that the challenged ordinance absolutely bans soliciting

---

[38]<u>Id.</u> at 17.

[39]<u>See also</u> <u>id.</u> at 9 (asserting that "the temporal limitation does not operate as a 'ban' of all contributions for the election cycle . . . but rather acts as a mere delay of the collection of contributions until a time frame closer to the election").

or accepting contributions for a period of almost eleven months.[40] Although the temporal ban allows candidates to solicit and receive contributions for a thirteen-month period, only nine of those thirteen months precede an election while four months succeed an election. Missing from defendants' briefing is any evidence showing that the nine-month period during which the challenged ordinance allows candidates to solicit and receive contributions before an election allows Gordon and other candidates to amass resources needed to wage effective campaigns. See In re Cao, 619 F.3d at 420 (recognizing that whether restrictions impose too stringent of a burden on political speech depends in part on whether the restrictions prevent the candidate from "effectively amassing the resources necessary to wage an effective campaign"). See also Buckley, 96 S. Ct. 636 (explaining that whether a contribution limit is unconstitutionally low depends in part on whether the limitation prevents the candidate from "amassing the resources necessary for effective [campaign] advocacy").

To the extent that defendants argue that they are entitled to summary judgment because Gordon has other opportunities for speech and association during the period of the temporal ban, i.e., he may spend his own funds, he may spend funds left over from his previous

---

[40] See n. 3, above, explaining the calculation of the number of months that candidates for city elective office are respectively banned from soliciting and receiving contributions and allowed to solicit and receive contributions.

campaign, or he may use free social media, this argument has no merit. The Fifth Circuit and the Supreme Court have both expressly rejected the idea that defendants can escape First Amendment scrutiny by citing alternative avenues of communication. See Catholic Leadership, 764 F.3d at 430-31 (rejecting the Texas's argument that 60-day waiting period is narrowly tailored because "interested speakers have many other opportunities for speaking during the 60-day period").

COH Ordinance § 18-35(a) prohibits solicitation and receipt of contributions by candidates for city elective office for a significant eleven-month period of time spanning most of the off-election year, and allows candidates to solicit and receive contributions for only nine months before an election and four months after an election. This prohibition impacts First Amendment rights of free speech and association of candidates for city elective office such as Gordon. See Buckley, 96 S. Ct. at 636-44. Because defendants have failed to present any evidence establishing that the challenged ordinance (1) advances the city's interest of preventing quid pro quo corruption or its appearance, or (2) is closely drawn to advance that interest, defendants' motion for summary judgment will be denied.

## IV. **Plaintiff's Motion for Preliminary Injunction**

Gordon moves for a preliminary injunction to enjoin defendants from enforcing the temporal ban on soliciting and receiving contributions contained in COH Ordinance § 18-35(a) so that he can exercise "fundamental rights to speech and association, protected under the First Amendment to the United States Constitution, in the immediate period leading up to the November 2015 City of Houston elections."[41] Gordon also moves the court to waive the bond requirement of Federal Rule of Civil Procedure 65(c).[42]

### A.    **Standard of Review**

A preliminary injunction is an extraordinary remedy that should be granted only if the movant clearly establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. Sells v. Livingston, 750 F.3d 478, 480 (5th Cir. 2014)(citing Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011)). See also Jackson Women's Health Organization v. Currier, 760 F.3d

---

[41]Plaintiff's Motion for Preliminary Injunction, Docket Entry No. 2, p. 4.

[42]Id. at 25.

35

448, 452 (5th Cir. 2014). The decision to grant or deny a motion for preliminary injunction is left to the sound discretion of the district court. Id. at 451 (citing Janvey, 647 F.3d at 591-92).

## B. **Analysis**

### 1. Substantial Likelihood of Success on the Merits

Gordon raises facial and as-applied challenges to the temporal ban on soliciting and receiving contributions that COH Ordinance § 18-35(a) imposes on candidates for city elective office. Gordon argues that he is likely to succeed on the merits because the temporal ban at issue violates rights to freedom of speech and association that the First Amendment guarantees to him and to other candidates for city elective office, and that defendants are unable to cite any evidence capable of establishing that the challenged ordinance represents means that are closely drawn for advancing the sufficiently important governmental interest of preventing quid pro quo corruption or its appearance.

Defendants argue that Gordon is unlikely to succeed on the merits because he lacks standing and because the challenged ordinance does not violate his First Amendment rights either facially or as-applied. Defendants argue that Gordon lacks standing because he cannot link the challenged ordinance to any harm, but for the reasons stated above in § II.A, the court has already concluded that Gordon has standing to pursue this action in

36

federal court. Defendants argue that the challenged ordinance does not violate Gordon's First Amendment rights either facially or as applied, but for the reasons stated above in § II.A and § II.B the court has already concluded that defendants' motion to dismiss for failure to establish standing under Article III and for failure to state a claim for which relief may be granted should be denied because Gordon has sufficiently alleged that COH Ordinance § 18-35(a) violates his First Amendment rights to freedom of speech and association.

Although Gordon alleges both facial and as-applied challenges to COH Ordinance § 18-35(a), the Supreme Court has stated that "[t]he label is not what matters. The important point is that plaintiffs' claim and the relief that would follow — an injunction barring [enforcement of the challenged ordinance] — reach beyond the particular circumstances of th[is] plaintiff[]." John Doe No. 1 v. Reed, 130 S. Ct. 2811, 2817 (2010) (citing United States v. Stevens, 130 S. Ct. 1577, 1587 (2010)). Because Gordon seeks a preliminary injunction that would enjoin defendants from enforcing the temporal ban on soliciting or receiving contributions found in City of Houston Code of Ordinances § 18-35(a) not just against him but against all candidates for city elective office, Gordon must satisfy the standards for a facial challenge. Id.

To present a colorable claim in a facial challenge, a plaintiff must demonstrate that no set of circumstances exists

under which the challenged law would be valid, that the law lacks
any plainly legitimate sweep, or that a substantial number of the
law's applications are unconstitutional as judged in relation to
its plainly legitimate sweep. Catholic Leadership, 764 F.3d at 426
(citing Stevens, 130 S. Ct. at 1587). Defendants have already
moved for summary judgment arguing that the challenged ordinance
advances a sufficiently important interest, i.e., preventing quid
pro quo corruption and its appearance, and that the challenged
ordinance is closely drawn to advance this interest without
abridging First Amendment rights. For the reasons stated above in
§ III, the court has concluded that defendants' motion for summary
judgment should be denied because defendants have failed to cite
evidence showing that the challenged ordinance advances the city's
interest in preventing quid pro quo corruption or its appearance,
or that it is closely drawn to do so. The court, therefore,
concludes that Gordon has demonstrated a substantial likelihood of
success on the merits.


### 2. Likelihood of Irreparable Injury

The court also concludes that Gordon has adequately
established that he will sustain irreparable injury unless
defendants are enjoined from enforcing COH Ordinance 18-35(a).
Defendants seek to minimize the harm caused to Gordon by arguing
that "the temporal limitation . . . does not operate to limit the

number of candidates a donor may support and does not force a donor to choose which of several policy concerns he may advance," but "acts as a mere delay of the collection of contributions until a time frame close to the election."[43] But both the Supreme Court and the Fifth Circuit have said that "[t]he loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." Texans for Free Enterprise, 732 F.3d at 539 (citing Elrod v. Burns, 96 S. Ct. 2673, 2689-90 (1976)). Moreover, the Fifth Circuit has recognized that the ability to speak is limited when money cannot be raised to pay for speech. See id. The fact that COH Ordinance § 18-35(a) abridges Gordon's rights of political expression and association weighs in favor of finding irreparable harm.

### 3.   Balance Between Harm to Gordon and Harm to Defendants

Defendants have failed to articulate what, if any, harm they will suffer if they are enjoined from enforcing the challenged ordinance. Instead, defendants merely repeat the same unsupported anti-corruption grounds for enforcement. The court concludes that any harm caused to defendants by issuing the injunction does not outweigh the more serious harm that will be suffered by Gordon if the challenged ordinance is enforced against him.

---

[43]Defendants' Motion for Summary Judgment, Docket Entry No. 15, p. 9.

4. <u>Balancing of Public Interest</u>

The court concludes that the public interest will not be disserved by issuance of a preliminary injunction. As the Fifth Circuit stated in <u>Texans for Free Enterprise</u>, 732 F.3d at 539, "injunctions protecting First Amendment freedoms are always in the public interest."

5. <u>Conclusion</u>

Because defendants have failed to present any evidence that the temporal ban on soliciting and receiving contributions imposed on candidates for city elective office by COH Ordinance § 18-35(a) is necessary to prevent corruption or the appearance of corruption, and because Gordon has sufficiently demonstrated all the prerequisites to issuance of a preliminary injunction, Gordon's motion for preliminary injunction will be granted.

6. <u>Bond Requirement of Rule 65(c)</u>

Gordon moves the court to waive the bond requirement of Federal Rule of Civil Procedure 65(c).[44] Defendants have not responded to Gordon's request that the bond be waived.

Federal Rule of Civil Procedure 65(c) provides: "The court may issue a preliminary injunction . . . only if the movant gives

---

[44]Plaintiff's Motion for Preliminary Injunction, Docket Entry No. 2, p. 25.

security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Despite the apparently mandatory language of Rule 65(c), the Fifth Circuit has held that a court, in the proper exercise of its discretion, "may elect to require no security at all" in an appropriate case. <u>Kaepa, Inc. v. Achilles Corp.</u>, 76 F.3d 624, 628 (5th Cir. 1996) (quoting <u>Corrigan Dispatch Co. v. Casa Guzman</u>, 569 F.2d 300, 303 (5th Cir. 1978). Because there is no risk of monetary loss to the defendants as a result of this preliminary injunction, and because defendants have not responded to Gordon's request that the bond be waived, Gordon's request that the bond be waived will be granted.

## V. Conclusions and Order

For the reasons stated in § II.A and B, Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss for Failure to State a Claim and Memorandum of Law in Support, Docket Entry No. 11, is **DENIED**.

For the reasons stated in § III, above, Defendants' Motion for Summary Judgment, Docket Entry No. 15, is **DENIED**.

For the reasons stated in § IV, above, Plaintiff's Motion for Preliminary Injunction and request to waive the bond requirement of Federal Rule of Civil Procedure 65(c), Docket Entry No. 2, are **GRANTED**. The City of Houston, Texas, and Annise Parker, Mayor of

the City of Houston, Texas, are **PRELIMINARILY ENJOINED** from enforcing the temporal ban on soliciting or receiving contributions in City of Houston Code of Ordinances § 18-35(a).

The court will conduct a scheduling conference on Friday, January 16, 2015, at 2:30 p.m., in Courtroom 9B of the Federal Courthouse, 515 Rusk, Houston, Texas, 77002.

SIGNED at Houston, Texas, this 9th th day of January, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE